UNITED STATES, Appellee,

v.

Willie TIPTON, Private, U.S. Army, Appellant.

No. 43661.

SPCM 16450.

U.S. Court of Military Appeals.

Sept. 6, 1983.

For Appellant: *Captain Peter R. Huntsman* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel R. Rex Brookshire II, Major Robert C. Rhodes* (on brief); *Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert.*

For Appellee: *Captain Thomas E. Booth* (argued); *Colonel R.R. Boller, Lieutenant Colonel John T. Edwards* (on brief); *Colonel James Kucera, Captain Glenn D. Gillett, Captain Paul K. Cascio, Captain Richard G. Mann, Jr.*

*Opinion of the Court*

COOK, Judge:

Appellant was convicted, contrary to his pleas, of wrongfully possessing marijuana in the hashish form, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.[1] We granted review of the following assigned issue:

> WHETHER THE AUTHORIZATION TO SEARCH APPELLANT WAS BASED ON PROBABLE CAUSE SINCE THE INFORMANT THAT PROVIDED THE FACTUAL BASIS FOR THE AUTHORIZATION TO SEARCH WAS SHOWN TO HAVE AN IMPROPER MOTIVE NOT REVEALED TO THE AUTHORIZING OFFICIALS, WAS NOT SHOWN TO HAVE BEEN RELIABLE IN THE PAST, AND DID NOT PROVIDE SUFFICIENT DETAILS TO THE AGENT TO GIVE SUFFICIENT INDICIA OF TRUSTWORTHINESS.

I

The controversy in this case centers around the reliability of the informant, Boyd, appellant's roommate. Several

1. Appellant's approved sentence extends to a bad-conduct discharge, confinement at hard labor for 45 days, forfeiture of $300 pay per month for 3 months, and reduction to private E–1.

weeks prior to the charged incident, a marijuana "smoking bowl" was found in Boyd's shaving kit during a health and welfare inspection. Boyd was reportedly furious at the discovery, denied vehemently that it belonged to him, and vowed to get even with the person who planted it there. Boyd suspected appellant and so informed law enforcement officials. Initially, Boyd was offered nonjudicial punishment for possession of the "bowl," which contained marijuana residue. Subsequently, that action was vacated by Boyd's commander.

As a result of the episode, Boyd began communicating with law enforcement personnel regarding appellant's drug activities. During the month of March 1981, Boyd called Military Police Investigator Ronald Turner on several occasions and informed him that appellant was planning to purchase marijuana on or about pay day, March 31, 1981. When that day arrived, appellant allegedly displayed his newly acquired stock of hashish to Boyd. After smoking a sample of the merchandise with appellant, Boyd made his way to an off-post bar to telephone Turner. He told Turner that he had seen appellant with the drugs, but that he could not be certain they were still on his person.

Turner, in the company of other law enforcement officials, hastened to the bar to find Boyd, but Boyd had left. The officers then attempted to locate appellant's battalion commander, also without success. They did find a Major Gunther, the battalion S–3, to whom the battalion commander had delegated[2] authority to authorize searches. Turner requested permission to search appellant and his assigned area in the barracks. Turner told Gunther of the information provided by the informant, that the informant had just begun working for them, and that he had provided no major information previously. Turner did not tell Gunther that the informant had himself

been apprehended for possession of marijuana and had vowed to get even with appellant. Gunther authorized a search of appellant's person, his room, and his personal effects. There is no indication in the record that Gunther authorized an apprehension of appellant.

Turner and his fellow officers next proceeded to appellant's unit, where they found appellant at the Charge of Quarter's desk. Appellant was apprehended and searched in the hallway adjacent to his room. Numerous packets of hashish were found on his person. There is no indication that either appellant's room or his personal effects were searched.

Prior to trial, the defense moved to suppress the marijuana on the ground "that there was insufficient probable cause to apprehend." In the course of argument on the motion, defense counsel extended his thesis to include the contention that the search authorizing official, Major Gunther, was not provided sufficient information to authorize a search/apprehension.

However, the military judge did not base his ruling on the propriety of Major Gunther's action. Rather, the judge explained his findings as follows:

MJ: All right, these are what I have found to be the essential facts of the case. At some time before 1 March 1981 PFC Boyd informed MPI Turner that he was sure that . . . [appellant] had been in possession of hash and at that time Boyd agreed to assist Turner by providing information concerning drug use. At some time in early March Boyd informed Turner that . . . [appellant] had spoken about getting some hash. Later in March Boyd informed Turner that . . . [appellant] was planning to obtain hash on or about payday. On 31 March at about 1430 Boyd in-

---

2. These events occurred prior to the date of this Court's opinion in *United States v. Kalscheuer,* 11 M.J. 373 (1981), which precludes such delegations of authority. However, we have previously determined that the *Kalscheuer* rule would be applied prospectively,

based on "justifiable reliance by law enforcement personnel and commanders." *Id.* at 380; see *United States v. Ramsey,* 13 M.J. 158 (C.M.A.1982). Accordingly, Major Gunther's authority is not an issue in this case.

formed Turner that he had seen ... [appellant] in possession of a large quantity of hash at about 12 o'clock.

At about 1540 on 31 March MPI Kemple, working with Turner apprehended ... [appellant] in the hallway outside ... [appellant's] barracks room. Staff Sergeant Naig searched ... [appellant] and discovered the items which ... [appellant] has moved to suppress.

Having said this, the military judge denied the defense motion to suppress.

The Court of Military Review concluded succinctly that

[t]he record fully supports the ruling of the military judge that the search of appellant was made incident to a lawful apprehension and consequently the evidence was admissible.

*United States v. Tipton,* unpublished opinion (SPCM 16450, April 19, 1982).

Before this Court, appellant seeks to "go behind the warrant" issued by Major Gunther. Specifically appellant reiterates his complaint that Gunther was not sufficiently apprised of the reliability, or lack thereof, of Boyd. In light of this record, we have little occasion to consider the correctness of Major Gunther's authorization. Like the Court of Military Review and the trial court before, we resolve this case based solely on the appropriateness of the apprehension and the search incident thereto.

## II

█ Military police, "when in the execution of their ... police duties, ... are authorized to apprehend, if necessary, persons subject to the code or subject to trial thereunder upon reasonable belief that an offense has been committed and that the person apprehended committed it." Para. 19*a*, Manual for Courts-Martial, United States, 1969 (Revised edition). *See* Article 7(b), UCMJ, 10 U.S.C. § 807(b). Upon apprehension, the officers may lawfully search the person and immediate surroundings of a suspect. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Chimel v. California,* 395 U.S. 752,

89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). There is no requirement under the Fourth Amendment that military police officers effectuating probable cause apprehensions in public places, such as a barracks hallway, obtain search warrants or other authorization from a magistrate or a commander. *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). *See United States v. Ezell,* 6 M.J. 307, 317 (C.M.A.1979). *Cf. Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Thus the only issue here is whether MPI Turner and his associates had probable cause to apprehend appellant.

█ Our analysis begins—and until recently might have ended—with the well-known "two-pronged test" of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). This test requires that an informant's "veracity" or the "reliability" of his information be established on the one hand, and that his "basis of knowledge" be established on the other hand. *See Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 2327, 76 L.Ed.2d 527 (1983). With respect to the latter, there is no contest as the informant, Boyd, plainly indicated that his basis of knowledge was personal observation. It is the initial prong, Boyd's "veracity" or the "reliability" of his information, that is challenged by appellant.

Recently in *Illinois v. Gates, supra,* the Supreme Court clarified its holdings in *Aguilar* and *Spinelli.* The Court rejected the Illinois Supreme Court's apparent conclusion "that the anonymous letter," which the police used in part to obtain a search warrant, had to "satisfy each of two independent requirements [the *Aguilar-Spinelli* two-pronged test] before it could be relied on." The Court agreed with the Illinois Court "that an informant's 'veracity,' 'reliability' and 'basis of knowledge' are all high-

ly relevant in determining the value of his report." *Id.* However, the Supreme Court did

> not agree . . . that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case. . . Rather . . . they should be understood simply as closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

*Id.* 103 S.Ct. at 2327–28 (footnote omitted).

Eschewing a more "rigid" approach, the Supreme Court reiterated that "the central teaching of . . . [their] decisions bearing on the probable cause standard is that it is a 'practical, nontechnical conception.'" *Id.* at 2328, quoting *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). "These [probabilities]," said the Court, "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.,* quoting *Brinegar v. United States, supra* at 175, 69 S.Ct. at 1310. The "two prongs," continued the Court,

> are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. *See, e.g., Adams v. Williams,* . . . 407 U.S. [143,] 146–147 [92 S.Ct. 1921, 1923, 32 L.Ed.2d 612] [1972]; *United States v. Harris,* 403 U.S. 573 [91 S.Ct. 2075, 29 L.Ed.2d 723] (1971).

103 S.Ct. at 2329. Accordingly, the Court "abandon[ed] the 'two-pronged test,'" *id.* at 2332, which

> encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate.

*Id.* at 2330 (footnote omitted). "In its place," the Court "reaffirm[ed] the totality of the circumstances analysis that traditionally has informed probable cause determinations," *id.* at 2332, and "which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip." *Id.* at 2330.

In *Gates,* unlike here, the information came from an anonymous tipster. The Supreme Court noted that its "decisions applying the totality of circumstances analysis . . . ha[d] consistently recognized the value of corroboration of details of an informant's tip by independent police work." Further, the Court "recognized the probative value of corroborative efforts of police officials." Due to the extent of corroboration accomplished by the police in *Gates,* albeit in innocent detail, the Court concluded that "[t]he showing of probable cause in . . . [*Gates*] was fully as compelling as that in *Draper.*"[3] *Id.* at 2334. Further, the Court adopted Justice White's observation in *Spinelli v. United States, supra* 393 U.S. at 427, 89 S.Ct. at 594 (concurring), that "[b]ecause an informant is right about some things, he is more probably right about other facts." Though admitting that the information in *Gates* might not be sufficient "to satisfy some views of the 'veracity prong' of *Spinelli,*" the Supreme Court thought it was "enough, for purposes of assessing probable cause." *Id.* 103 S.Ct. at 2335.

Under the totality-of-the-circumstances test announced in *Gates,* we have no hesitancy in sustaining the military judge's decision to admit the evidence. In *Gates,* the weakness in the tip was the anonymity and lack of proven reliability of the informant. This was overcome, in the Supreme Court's view, by the specificity of the information and the substantial corroboration provided by law enforcement officials. In the instant case, the question mark in the probable cause equation is the reliability of the informant, Boyd. However unlike in *Gates,* Boyd's identity was known to the law en-

**3.** *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

forcement officials; so was his military organization. Like the details and corroboration in *Gates*, these facts bolster Boyd's credibility, for Boyd was in a poor position to fabricate with impunity.

We have previously recognized the unique "truth-telling effect" of an identified servicemember's giving information in the presence of a superior officer. *United States v. Land*, 10 M.J. 103, 105, 107 (C.M.A. 1980). This same salutary effect is present when the authority is a military police officer. *United States v. Harris, supra* 403 U.S. at 593, 91 S.Ct. at 2086 (Harlan, J., dissenting); *United States v. Davis*, 617 F.2d 677, 693 (D.C.Cir.1979). Simply put, there is a degree of accountability in a military environment that is unparalleled in civilian society. *United States v. Schneider*, 14 M.J. 189, 192–93 (C.M.A.1982); *United States v. Davenport*, 9 M.J. 364 (C.M.A. 1980); *see Schlesinger v. Councilman*, 420 U.S. 738, 757, 95 S.Ct. 1300, 1312, 43 L.Ed.2d 591 (1975). Thus, taking a "common-sense" approach to probable cause, we find in the totality of the circumstances that Boyd's "accountability" was sufficient to overcome his lack of proven reliability.

Moreover, even before the *Gates* opinion was handed down, a growing body of jurisdictions had concluded that the *Aguilar-Spinelli* test applied only in cases of unknown or "professional" informants. *United States v. McCoy*, 478 F.2d 176, 179 (10th Cir.1973). *See United States v. Hunley*, 567 F.2d 822, 825 (8th Cir.1977); *United States v. Burke*, 517 F.2d 377, 380 n. 2 (2d Cir. 1975); *United States v. Bell*, 457 F.2d 1231, 1238–39 (5th Cir.1972); *United States v. Burden*, 5 M.J. 704, 707–08 (A.F.C.M.R. 1978), *aff'd*, 11 M.J. 151 (C.M.A.1981). Where an informant is an identified servicemember under military control, we find this rationale to be particularly persuasive.

Thus, it was unnecessary here for the military police to develop a lengthy "track record" on Boyd before crediting his information. Under the standard of *Illinois v. Gates, supra,* we are satisfied that the officers had probable cause to believe that appellant had committed an offense. It follows that the apprehension was lawful, and the contraband seized incident thereto was properly received in evidence.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.