UNITED STATES

v.

**Kenneth C. QUEEN, 251 78 5023, Electronics Technician Third Class (E–4), U.S. Navy.**

**NMCM 84 1588.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 7 Oct. 1983.

Decided 28 June 1985.

818

CDR David C. Larson, JAGC, USN, Appellate Defense Counsel.

LT Mark A. Zuboff, JAGC, USNR, Appellate Defense Counsel.

LT Joseph G. Lee, JAGC, USNR, Appellate Government Counsel.

Before GREGORY, Senior Judge, and MITCHELL and BARR, JJ.

GREGORY, Senior Judge:

Appellant was tried by a general court-martial constituted with officer members. Pursuant to his guilty pleas, he was convicted of two specifications of violating U.S. Navy Regulations, 1973, by loaning money to shipmates at an excessive rate of interest, in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892. In addition, contrary to his pleas of not guilty, he was found guilty of two other violations of U.S. Navy Regulations, 1973, by wrongfully possessing a dangerous weapon (Liberty Arms Derringer .357 and four bullets) and by wrongfully possessing drug abuse paraphernalia (Zig-Zag papers), in violation of Article 92, UCMJ; wrongful appropriation of U.S. Navy tools of some value, in violation of Article 121, UCMJ, 10 U.S.C. § 921; and possession of some amount of marijuana, possession of some amount of methamphetamines, distribution of one-quarter ounce of marijuana, communication of a threat to a Seaman Recruit Hatfield, and communication of a threat to a Seaman Recruit McNutt, in violation of Article 134, UCMJ, 10 U.S.C.

§ 934. Appellant was sentenced to a bad conduct discharge, confinement at hard labor for 18 months, forfeiture of $380.00 per month for 18 months, and reduction to pay grade E-1. The convening authority disapproved the finding of guilty as to the alleged distribution of marijuana; however, he approved the sentence as adjudged.

I

The first question we consider is whether the military judge erred in denying the defense motion to suppress the fruits of a search of appellant's automobile located aboard Naval Station, Long Beach, California. Captain Barnhart, Commanding Officer, Naval Station, Long Beach, authorized the search on the basis of information provided by LCDR Peck, Executive Officer of USS JOHN YOUNG (DD-973), the ship to which appellant was attached. LCDR Peck had telephoned Captain Barnhart and advised him that several crew members had been recently threatened by appellant and were frightened since a crew member had previously seen a gun in appellant's car. LCDR Peck did not identify the crew members threatened or the informants; however, he did advise Captain Barnhart that one of these sailors who reported this was under oath and he (LCDR Peck) believed what he was hearing. Captain Barnhart was further advised that appellant lived aboard USS JOHN YOUNG and had not checked the gun in with the ship's armory. Captain Barnhart was not informed that these informants had been previously involved in drug transactions, had multiple nonjudicial punishments, were awaiting administrative discharge, one had been promised assistance toward a better discharge for information about drug dealing aboard the ship, and one was indebted to appellant. The search of appellant's automobile uncovered the dangerous weapon, the drugs and drug-related items, and the U.S. Navy tools.

■ Appellant argues that the search in this case was unlawful because the informants were not proven to be reliable under

the "*Aguilar/Spinelli* test"[1] and the information provided by one of the informants was stale. The *Aguilar/Spinelli* test requires that an informant's "veracity" or the "reliability" of his information be established on the one hand, and that his "basis of knowledge" be established on the other. We concur in the Government contention, however, that the rigid approach required by the *Aguilar/Spinelli* test is no longer the probable cause standard in the military, and that the "totality of the circumstances" approach set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), is now the correct standard in military law. *See United States v. Tipton*, 16 M.J. 283 (C.M.A.1983). *See also United States v. Postle*, 20 M.J. 632 (NMCMR 1985).

In *Illinois v. Gates*, the Supreme Court ruled that the "two-pronged test" and the informant's veracity, reliability, and basis of knowledge, as discussed in *Aguilar* and *Spinelli*, are all highly relevant considerations in determining the validity of his report. The Court, however, did not agree:

> that these elements should be understood as entirely separate and independent requirements to be rigidly enacted in every case.... Rather ... they should be understood simply as closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

*Illinois v. Gates*, 103 S.Ct. at 2327–28.

> ... The "two prongs" ... are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.
> ... Accordingly, the Court abandoned the two-pronged test, ... which ... encouraged an excessively technical dissection of informants' tips, with undue at-

tention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate. "In its place," the Court "reaffirm[ed] the totality of the circumstances analysis that traditionally has informed probable cause determinations," and "which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip.

*United States v. Tipton*, 16 M.J. at 286, quoting from *Illinois v. Gates*.

In addition, it was further noted in *Illinois v. Gates* that "the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis ... for conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." 103 S.Ct. at 2331.

■ In the case *sub judice*, Captain Barnhart was aware that crew members of USS JOHN YOUNG had reported threats involving use of a firearm and that another crew member had seen a weapon in appellant's vehicle about six weeks earlier. He also knew that appellant lived aboard USS JOHN YOUNG and had not checked a firearm into the ship's armory. From this, it was reasonable for Captain Barnhart to deduce that appellant did possess a firearm and that it would probably still be located in his vehicle. Captain Barnhart testified at trial that he also felt an expediency present because the vehicle was currently located aboard the Naval Station, it was late in the work day, and he could not be sure of appellant's intentions.

Captain Barnhart was not aware of the informants' poor reputations aboard USS JOHN YOUNG; however, he had been advised that the informants had come forward and reported these matters to their Executive Officer. The Court of Military Appeals has recognized the unique "truth-telling effect" of a servicemember giving

---

**1.** *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

information to a superior officer, *United States v. Land,* 10 M.J. 103 (C.M.A.1980), and the degree of accountability in military society not always found in civilian society. *United States v. Tipton, supra.*

We concede that the question of probable cause in this case is a close one. Examining the totality of circumstances surrounding the case, however, we find the information available to Captain Barnhart, including the accountability of the less than savory informants, sufficient to find probable cause for the ordered search. On this basis, we would find the military judge to have been correct in denying the motion to suppress.

■ Even beyond the "totality of the circumstances" in this case, however, an additional basis exists for upholding the legality of the search. The record of trial establishes that the mechanism used to accomplish the search was a written search authorization (Appellate Exhibit I) signed by Captain Barnhart and directed to Master-at-Arms First Class C.A. Berit, U.S. Navy. The record of trial also clearly establishes that Petty Officer Berit relied in "good faith" on this facially sufficient search authorization. The facts of this case are remarkably similar to those in *United States v. Leon,* 468 U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon,* a confidential informant of questionable reliability informed police that two persons were selling cocaine. The informant indicated that he had witnessed a sale five months earlier. The U.S. District Court ruled that the information was unsupported by probable cause and fatally stale. The United States Supreme Court ultimately determined that the Fourth Amendment exclusionary rule does not bar use of evidence obtained by law enforcement officers acting in objectively reasonable and good faith reliance on a facially valid search warrant issued by a detached and neutral magistrate, even though the warrant may be ultimately found to be unsupported by probable cause. In *United States v. Postle, supra,* Judge Barr set forth an excellent rationale toward the conclusion that

the "good faith" exception enunciated in *Leon* applies in military jurisprudence. 20 M.J. at 642–47.

There are exceptions to the "good faith" exception of *Leon.* These would include a warrant issued on the basis of information which the affiant knew to be false or would have known to be false except for a reckless disregard for the truth, a warrant issued by a magistrate wholly abandoning his judicial role, a warrant based on an affidavit so lacking in indicia of probable cause as to make official belief in its existence entirely unreasonable, and a warrant so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officers could not reasonably presume it to be valid. *Leon,* 104 S.Ct. at 3421–22. None of these exceptions exist, however, in the case at bar.

Petty Officer Berit had no previous involvement in the case and no conversation with Captain Barnhart concerning the circumstances leading up to issuance of the search authorization. There is no indication that Captain Barnhart abandoned his neutral and detached status or that he was provided information known to be false or in reckless disregard of the truth. The search authorization was explicit as to the search of appellant's car for a handgun and ammunition. Petty Officer Berit expeditiously carried out the search in reliance on this facially sufficient search authorization.

In summary, we find that *Leon* is dispositive in this instance. Petty Officer Berit clearly acted reasonably and in good faith and any technical deficiencies as to the establishment of probable cause for the search authorization issued do not require exclusion of the fruits of the search. On this basis also, the ruling of the military judge was correct.

II

Appellant has also assigned as error before this Court that his guilt of the alleged threat to Seaman Recruit Hatfield (Charge

III, Specification 5) was not established beyond a reasonable doubt. He also directs our attention to his trial defense counsel's response to the post-trial review of the staff judge advocate in which a similar contention is made with respect to the alleged threat to Seaman Recruit McNutt (Charge III, Specification 6).[2] We concur in appellant's contention as to Seaman Recruit McNutt, but not as to Seaman Recruit Hatfield.

■ As argued by appellant, both Hatfield and McNutt had extremely poor disciplinary records and reputations for truth and veracity. Of course, there is no requirement that a witness be of spotless character. This is merely one factor in determining the weight to be given his testimony. With respect to Seaman Recruit Hatfield, although there were no other witnesses to the alleged threat from appellant, the circumstances of his coming forward and reporting the alleged incident to the Executive Officer, and the events which transpired in that officer's cabin, add veracity to Hatfield's testimony regarding the threat. We are convinced beyond reasonable doubt of appellant's guilt as to this specification, as were the court members who saw and heard the witnesses.

■ A different situation exists as to the alleged threat against Seaman Recruit McNutt. The scenario as to this alleged offense finds McNutt, appellant, and a number of other crew members present in Central Control Station aboard USS JOHN YOUNG. The subject of McNutt acting as a drug informant for the command comes up. McNutt testified that appellant told him at this time, "Well, we have ways of taking care of people like you back home," and then made a gesture with his finger and hand simulating the firing of a pistol.

Appellant testified that he merely warned McNutt in a joking manner about acting as an informant and denied making any gesture such as described by McNutt. Appellant's testimony was essentially corroborated by HT1 Ortega, HT3 Hanke, and HTFN Kovach, who were present at the time. Even interpreting Seaman Recruit McNutt's testimony in a favorable light, and discounting the attacks on his credibility, we reach the conclusion that any remarks and gestures made by appellant were misinterpreted by McNutt and do not constitute communication of a threat. Succinctly, we have a reasonable doubt as to appellant's guilt of this alleged offense.

III

In view of the foregoing, the finding of guilty as to Specification 6 under Charge III is set aside, and that specification is dismissed. The remaining findings of guilty approved on review below are affirmed.

■ Upon reassessment, we note that appellant still stands convicted of a number of serious offenses. In addition, we note that his prior disciplinary record shows five prior instances of nonjudicial punishment. Examination of this record of trial tempers this latter notation, however, because nonjudicial punishment was apparently used as the primary "leadership" tool during this period aboard USS JOHN YOUNG.[3] Evaluating all aspects of appellant's remaining offenses and his prior record, in comparison to similar cases coming before this Court, some reduction in the sentence appears appropriate.

Accordingly, only so much of the sentence approved on review below as provides for a bad conduct discharge, confinement at hard labor for twelve months, for-

2. The court-martial order in this case needs to be corrected. It does not accurately reflect the charges which were before the court members (Appellate Exhibit XIII), including omission of Specification 6 of Charge III alleging the threat to Seaman Recruit McNutt.

3. Seaman Recruit McNutt indicated he had received nonjudicial punishment on six occasions. Another witness indicated he had received nonjudicial punishment on twelve occasions.

feiture of $380.00 per month for twelve months, and reduction to pay grade E–1 is affirmed.

Judge MITCHELL concurs.

BARR, Judge (concurring in part, dissenting in part):

I concur in the entirety of the majority except for that portion which reduces the affirmed sentence upon reassessment. The nature of the offenses of which appellant remains convicted are sufficiently serious that, upon reassessment, I would affirm the sentence adjudged.