UNITED STATES

v.

Jake A. LAZENBY, Machinery
Technician Third Class,
U.S. Coast Guard.

No. 1025.
CGCMS 24080.

U.S. Coast Guard Court of
Criminal Appeals.

2 June 1995.

Trial Counsel: LT Robert S. Schuda, USCG.

Defense Counsel: LCDR Hugh F. Sage, USCG.

Appellate Defense Counsel: LCDR Allen Lotz, USCG.

Appellate Government Counsel: LCDR Charles J. Bennardini, USCG.

Before Panel Six, BAUM, BRIDGMAN, and O'HARA, Appellate Military Judges.

BAUM, Chief Judge:

Appellant was tried by special court-martial judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, he was convicted of the following offenses: one specification of larceny of various articles of military property over a period of time, of an aggregate value of at least $805, in violation of Article 121, UCMJ; and two specifications in violation of Article 134, UCMJ, one for wrongful receipt of a pair of night vision goggles, military property of the United States, of a value of about $5,000, and the other for wrongful receipt of a monocular night vision device, of some value, knowing it had been stolen. The judge sentenced Appellant to a bad conduct discharge, confinement for four months, forfeiture of $400 pay per month for four months, and reduction to pay grade E–2. The convening authority approved the adjudged sentence as authorized by the pretrial agreement.

■ Appellant's plea bargain permitted conditional pleas preserving the right to appeal the judge's rulings on motions to suppress evidence obtained from a search of quarters and derivative evidence. Having entered such pleas with appeal rights preserved, Appellant now assigns as error the judge's ruling denying, in part, the motion to suppress. As his second assigned error, Appellant asserts that this Court lacks jurisdiction because of service of civilian judges who purportedly have not been appointed in accord with the Appointments Clause of the Constitution. This assignment has been rejected numerous times based on *United States v. Carpenter*, 37 M.J. 291 (C.M.A. 1993), petition for cert. filed, No. 93–676 (U.S. 29 October 1993). It is rejected again for the same reason. The first assignment remains to be addressed:

THAT THE MILITARY JUDGE ERRED BY DENYING, IN PART, THE DEFENSE MOTION TO SUPPRESS EVIDENCE OBTAINED FROM AN ILLEGAL SEARCH OF APPELLANT'S QUARTERS AND DERIVATIVE EVIDENCE OBTAINED AS A RESULT OF THAT SEARCH

Appellant contends that the search of his assigned quarters at Coast Guard Station Humbolt Bay, Samoa, California, was unlawful and that the evidence seized in that search, as well as any derivative evidence, should have been suppressed by the military judge. In support of this contention, Appellant argues that the official who authorized the search was not neutral and detached, as required, and that the search authorization was not based on probable cause. The authorizing official was a Coast Guard chief warrant officer, who, as the Commanding Officer of USCG Station Humbolt Bay, was responsible for the security and safety of quarters located there. He had no command authority over Appellant, who was attached to a Coast Guard cutter, but did exercise control over the quarters assigned to Appellant. This officer issued the search authorization on the basis of a written request and affidavit from a Coast Guard special agent investigating the suspected theft of night vision goggles from Appellant's cutter. That agent, who was well known by the commanding officer, presented the request and affidavit in person. After signing the authorization to search, the commanding officer accompanied the agent to the quarters and remained there throughout the search and seizure.

### A. Impartiality Requirement For Officer Authorizing Search

■ Pursuant to Military Rule of Evidence (M.R.E.) 315(d)(1), and Article 9–A–3 of the Coast Guard's Military Justice Manual (MJM), commanding officers are empowered to authorize searches as long as they are impartial. Appellant challenges the impartiality of the Commanding Officer, Coast Guard Station Humbolt Bay, by asserting that he did not act in a neutral and detached capacity. In support of this contention, Appellant says that the commanding officer readily accepted the special agent's request for a search without questioning him or seeking guidance when this was the authorizing officer's first such search request. Appellant sees these actions as indication of a lack of neutrality.

Appellant also says that the actions of the commanding officer in accompanying the agent to the scene "and his participation in the search itself destroy any illusion of impartiality." Appellant's Brief at p. 8. The Government does not address this specific assertion, but points out that the commanding officer was not involved in the theft investigation and had no personal motive to act other than impartially. Quoting from *United States v. Sloan*, 30 M.J. 741, 746 (A.F.C.M.R. 1990), the Government says, "He did not instigate the investigation or devise the plan that ensnared the Appellant." Government's Brief at p. 3.

■ The judge's findings accord with the views expressed by the Government. The judge found that there was no evidence of anything in the background of the commanding officer that would taint his neutrality, that he "had no prior or subsequent involvement with the investigation except for what transpired on the day of the search in question." R. 267. We agree. The evidence shows that the commanding officer did not know the accused, had no interest in the investigation, personal or otherwise, and was acting solely as the officer responsible for the quarters on his station.

The judge also found that the authorizing officer's actions by going to the room and witnessing the search did not in any way taint his neutrality. In this regard, M.R.E. 315(d) says that an otherwise impartial authorizing official does not lose that character merely because he or she is present at the scene of the search. The evidence indicates that, while the commanding officer remained at the scene for the entire procedure, it was essentially to observe that proper actions were being taken in quarters for which he was responsible. We, therefore, reject Appellant's characterization of that officer's involvement as one of participation in the search. His presence during the search did not reflect a lack of impartiality.

We also find it understandable that the commanding officer relied on the agent's affidavit and explanation in issuing the authorization to search, without questioning him at length. The commanding officer knew the agent personally and had confidence in his explanation, which set out all the necessary details. The commanding officer said that he asked enough questions to verify in his mind that the agent had the necessary information and that he "believed there was probable cause to go look in that area." R. 199. Nothing in his actions would cause us to conclude that he was anything but a neutral and detached official who acted impartially in the matter. There was a substantial basis for the judge's neutrality finding, and, considering the issue *de novo*, we reach the same conclusion.

■ As a separate matter, MJM, Article 9–A–3, recommends that commanding officers authorize searches based on probable cause only in the most exigent circumstances when resort to a military judge would likely result in harm or loss of evidence. This case was certainly not one of exigency. The ship was at sea en route to Alaska, with the accused aboard, so there was no danger of his returning any time soon and disposing of the evidence. Moreover, there was no indication that a military judge was not available to act on a search request. No attempt was made by the agent to contact a judge and no guidance from a staff judge advocate was sought by the commanding officer nor, for that matter, were any steps taken to check the pertinent portions of the MJM.

Operating in this manner invites error. It increases the chances of an improper search and the violation of important individual rights. Departures of this kind from recommended procedures may also jeopardize the Government's case, with the possibility that time and resources invested in developing a prosecution will come to nought. Despite our criticism of the failure to follow the pertinent MJM provision, however, the seized evidence is still admissible. As MJM, Article 9–A–1a, makes clear: "Although the procedures set out herein should be followed as appropriate under [the] circumstances, deviations will not invalidate a search which would otherwise be valid." That leaves us with the remaining question, whether the requirement for probable cause was satisfied.

### B. *Probable Cause*

■ M.R.E. 315(f)(2) says that: "Probable cause to search exists when there is a reasonable belief that the ... property ... sought is located in the place ... to be searched." *United States v. Lopez,* 35 M.J. 35, 38 (C.M.A.1992), tells us that a determination in this regard should be based on the totality-of-the-circumstances test of *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983), rather than the replaced informant-reliability and basis-of-knowledge test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Appellant, while acknowledging the foregoing, also cites *United States v. Lopez, supra,* for the proposition that the *Aguilar–Spinelli* test remains highly relevant in determining probable cause. He contends that there was no probable cause to support the search authorization in this case because the search request depended entirely on the statement of one person and that person's reliability was not considered by either the requesting agent or the authorizing officer.

The facts bearing on this issue are found in the investigating agent's affidavit supporting the search request and in his testimony and that of the commanding officer. The affidavit recounted the agent's investigation of a reported theft of night vision goggles from the USCGC Acushnet and noted interviews of personnel attached to the ship. One of those interviewed was a Seaman Hill, who, others opined, had stolen the goggles. That individual acknowledged temporarily taking a night vision device that he returned after a few days. He, and two others interviewed, stated that the device he took was different from the one sought by the agent.

The affidavit went on to say that on a day the agent was at home he received a telephone call from the ship's executive officer on the "MARSAT" telephone system while the ship was at sea destined for Kodiak, Alaska. In the phone call, the executive officer stated that one of those interviewed by the agent had volunteered that he had engaged the Appellant in a conversation about the investigation and that the Appellant said "he was considering coming forward about the night scope because he stole it and felt bad that SN Hill was being accused of this particular theft."

The Appellant was then reported to have said "that he did not know how to turn the night scope in because it was hidden in a locked duffle bag [sea bag] which was stored in his closet of his room at CG Station Humbolt." App.Exh.XII. The executive officer gave the agent the number of the apartment assigned to Appellant and two others from the ship, along with information that there are no specific room assignments, but that most rooms inside the apartment are marked. This affidavit, as part of the request for authority to search, was presented to the commanding officer on the same day the call was received from the executive officer of the Acushnet. Noted in the affidavit also was the fact that the executive officer had been the agent's assistant branch chief in a former assignment and the agent clearly recognized the voice from numerous prior conversations.

Given these facts, the military judge concluded that the search authorization was based on probable cause. In reaching this conclusion he found, among other things, that the affidavit contained sufficient particular facts upon which to base a probable cause determination and that the commanding officer, in making that determination, reasonably relied on his prior dealings with the

executive officer of the Acushnet and with the investigating agent. Two other factors properly bearing on this matter are the timeliness of the information provided and the relationship between the crime objects and the place to be searched. *United States v. Lopez*, 35 M.J. 35, 38 (CMA 1992). Both of these aspects were present here, with the request for search authorization conveyed to the commanding officer the same day the telephone call from the Acushnet executive officer was received and the place to be searched pinpointed precisely.

Nevertheless, Appellant argues that probable cause requirements were not met because the only evidence presented to support the search, in his view, was the statement of one individual recounting what purportedly was said by the Appellant, and the reliability of that individual was not considered by the agent and the commanding officer. Indeed, that statement did furnish the location of the item sought, but there also was other evidence bearing on the decision to search. Investigative background was supplied which placed the reported statement in context and provided plausibility. Moreover, prior associations were such that queries and explanations concerning reliability could have been seen as superfluous.

From past dealings, the commanding officer had reason to consider the agent reliable, and both he and the agent knew the executive officer well enough to rely on his good judgment in assessing the credibility of the reported information. In this regard, we also note "the unique 'truth-telling effect' of an identified servicemember's giving information in the presence of a superior officer," as recognized in *United States v. Tipton*, 16 M.J. 283, 287 (CMA 1983). For all of these reasons we believe there was a substantial basis for the judge's probable cause determination. We have also assessed the evidence *de novo* and independently find to our satisfaction that there was probable cause to search Appellant's quarters and his locked sea bag. The assignment of error is rejected.

We have reviewed this record pursuant to Article 66, UCMJ, and have determined that the findings and sentence are correct in law and fact and should be approved. Accordingly, the findings and sentence, as approved below, are affirmed.

Judges BRIDGMAN and O'HARA concur.