**UNITED STATES**

v.

**Airman First Class Lawrence JOHNSON, FR 577–72–4045 United States Air Force.**

**No. ACM 24626.**

U.S. Air Force Court of Military Review.

28 Oct. 1985.

Colonel Leo L. Sergi and Lieutenant Colonel Patrick C. Sweeney, for accused.

Colonel Kenneth R. Rengert and Colonel Andrew J. Adams, Jr., for the U.S.

Before HODGSON, FORAY, MICHALSKI, SESSOMS, CANELLOS, MURDOCK, O'HAIR and CARPARELLI, Appellate Military Judges.

CANELLOS, Senior Judge:

The accused was convicted, contrary to his pleas, by a court consisting of officer members, of unlawful entry, larceny, failure to obey a lawful order and resisting apprehension. The approved sentence extends to a bad conduct discharge, confinement for 18 months, forfeiture of $400 pay per month for 18 months and reduction to airman basic.

On appeal, the accused invites our attention to a motion made by the trial defense counsel to suppress evidence seized pursuant to an authorization to search issued by the commander, claiming the search authorization was not based on probable cause as required by Mil.R.Evid. 315(f)(2). We find that the prosecution failed to establish at trial that the search authorization was based on probable cause, and, as a result, the military judge erred in admitting the fruits of the search, over the objection of the defense.

In order to discuss this issue adequately, a review of the pertinent facts is necessary. On or about 10 February 1984, someone broke into the off-base apartment of an Air Force member and stole a stereo expander therefrom. The next day, at work, the victim was discussing the theft and the fact that she was going to report it to the security police so they could take fingerprints from the scene. In the midst of this conversation, the accused, who was a coworker, made a statement questioning why someone would steal a stereo expander and yet not steal a large screen television set that was co-located with it. This seemed curious to the victim since the accused had never been inside her house and ostensibly did not know that she had such a T.V. In addition, the accused stated that it would do no good to take fingerprints since the security police did not have his fingerprints on file. These statements, coupled with the fact that she believed that the theft was probably perpetrated by someone in her office, and the fact that the accused had been a half hour late returning from his lunch on that date, caused the victim to suspect the accused. The victim did not report these suspicions to the security police until 28 February 1984. The next day, March 1 1984, she was interviewed by them. She provided all the above information as well as the fact that, although the accused lived in the barracks on base, he also lived with a U.S. Army member off-base, in the same general area as the victim.

On 1 March 1984, the security police investigator briefed the staff judge advocate as to the above information, and inquired whether there was sufficient probable cause to issue an authorization to search the accused's barracks room, car, and the home of the Army member. The staff judge advocate opined it was a close case but he believed there was sufficient probable cause to support these authorizations to search. He recommended that rather than searching immediately, it would be wise to await the return of the Army member, who was absent from the installation, and secure her permission to search.

The security police waited; however, on 6 March 1984, one day before the Army member was to return, they became suspicious that the accused was aware of their investigation and thought he might hide the stereo expander and therefore moved to search immediately. An authorization to search the accused's barracks room was

secured from his unit commander. Another authorization to search the Army member's home was secured from the base commander. The base commander had been fully briefed by the staff judge advocate on all the known facts surrounding the theft and the accused's probable involvement. The commander also knew the accused had a previous court-martial conviction for larceny, and his base exchange privileges had been revoked as a result.

A search of the barracks room was negative. When the security police arrived at the off-base quarters to effectuate a search there, they saw the accused exit carrying an over-sized gym bag, large enough to conceal the missing stereo equipment. When the accused observed the security police, he put the bag back into the house, closed the door and departed in his car. He was followed and apprehended as he was about to enter the installation. He was put in a detention facility, searched, and ordered to relinquish the key to the off-base quarters.

Unfortunately, none of the accused's suspicious activities at the quarters were reported to the base commander. Rather, the security police returned to the quarters, executed the search authorization they already had, searched, and discovered the stolen stereo range expander. The security police investigators candidly admitted they did not know where the stolen property was located. They suspected it could be in the barracks room, car or off-base quarters.

 First, we find, as the prosecution conceded at trial, the accused had standing to raise the issue of the legality of the search at the off-base residence. Mil.R. Evid. 311(a)(2). Next, we find that the base commander was the proper official to issue an authorization to search the off-base residence, in this overseas location. Mil.R.Evid. 315(d)(1). Finally, assuming *arguendo*, that there was sufficient information presented to the commander to support the search authorization for alterna-

tive locations, we find that the information was stale. *United States v. Bright*, 2 M.J. 663 (A.F.C.M.R.1976). *See also*, 1 LaFave, Search & Seizure, Sec. 3.7(a) (1978). As a result of our finding that the information was stale, we find the authorization to search was not based on probable cause. Mil.R.Evid. 315(b)(1) and (2).

At trial, and on appeal, the government asserted that the fruits of the search were admissible alternatively as: a search based on probable cause (Mil.R.Evid. 315(f)(1) ); a search not requiring probable cause because of exigency (Mil.R.Evid. 315(g) ); a search falling within the "inevitable discovery" exception (*Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) ); or a search falling within the "good faith" exception (*United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ).

 Our discussion above addresses the first claim. Clearly there was insufficient probable cause to support the authorization to search in this case. Second, we find that there was no exigency. The accused was in custody and there was sufficient time for the security police investigators to provide the new information to the commander and to secure a new authorization to search. Third, we reject, out of hand, that the "inevitable discovery" rule is broad enough to cover the type of situation we have before us, where either (1) there was sufficient information available to support the authorization to search yet that information was not provided to the commander, or (2) where the homeowner would have granted permission to search but the police acted before requesting or receiving such consent.

 Finally, we address the "good faith" exception. We find the "good faith" exception does not apply to trials by courts-martial governed by the Military Rules of Evidence, therefore, the evidence was not admissible on that basis. The Fourth Amendment[1] contains no provision precluding the

---

1. U.S. Const Amend IV:

The right of the people to be secure in their

use of evidence obtained in violation of its mandates. Rather, the exclusionary rule is a judicially declared remedy designed to safeguard Fourth Amendment rights, through a deterrent effect on the police authorities. *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Until recently, evidence seized as a result of a search warrant which was not based on probable cause was suppressible. The Supreme Court modified this rule, creating a limited exception by providing that evidence will not be suppressed if obtained in objectively reasonable reliance on a facially valid search warrant, issued by a magistrate who has not abandoned his judicially neutral role. *United States v. Leon, supra; Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

The Federal Rules of Evidence contain no provisions relative to the exclusionary rule, rather, the admissibility of evidence seized in violation of the Fourth Amendment is governed by case law. Therefore, cases tried under the Federal Rules of Evidence would be governed by the *Leon* rule.

The Military Rules of Evidence, in contrast, do contain provisions on the exclusionary rule. Mil.R.Evid. 311(a) provides that evidence obtained as a result of an unlawful search or seizure is inadmissible against the accused if there is a timely objection and the accused has an adequate interest in the place to be searched. Mil.R. Evid. 311(c) provides that a search is unlawful if it is carried out in violation of the United States Constitution or Mil.R.Evid. 312–317. Mil.R.Evid. 315(f)(1) provides that a search authorization must be based upon probable cause. Read together, when a search authorization requiring probable cause is not based on probable cause, the resulting search is unlawful and the fruits of that search are inadmissible in a court-martial, over the objection of one who has standing to complain. It is significant to note there is no "good faith" exception in

the Military Rules of Evidence, and *we find* that we cannot interpret one into the Rules.

■ Generally, the provisions of the U.S. Constitution apply to trials of servicemen by court-martial, and if there is a claimed difference, there is a heavy burden to show a need for such variance. *United States v. Ezell*, 6 M.J. 307 (1979). In some situations, the servicemember does not enjoy the full constitutional rights afforded a civilian. (Sixth Amendment right to trial by jury as opposed to the Article 25, U.C.M.J., 10 U.S.C. § 825 provision on composition of courts-martial; First Amendment right to freedom of speech as opposed to the limits placed on a military members' right to engage in political activities). In other situations, the military member has rights which are superior to his civilian counterparts. (Article 31, U.C.M.J., 10 U.S.C. § 831 protection against self-incrimination as compared to the Fifth Amendment rights).

The promulgation of the Military Rules of Evidence reflects a permissible exercise of authority granted the President. Article 36, U.C.M.J., 10 U.S.C. § 836. Since the Rules specifically provide for the exclusion of evidence seized under an authorization to search which was not based upon probable cause, we may not apply the more flexible standard adopted by the federal courts. Mil.R.Evid. 101; *United States v. Smith*, 13 U.S.C.M.A. 105, 32 C.M.R. 105 (1962).

We are not the first of the service courts to consider the applicability of the "good faith" exception to military practice. *United States v. Postle*, 20 M.J. 632 (N.M.C.M. R.1985) contains an excellent analysis of the opposing arguments in the subject area. We disagree with its conclusion that we can adopt a "good faith" exception under our Military Rules of Evidence, as presently written; further, we believe we should not comment on the desirability of

---

persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon

probable cause, supported by oath or affirmation, and particularly describing the place to be search, and the person or things to be seized.

the President amending our Rules to accommodate such an exception.[2]

Having found that the fruits of the search were improperly admitted into evidence, we further find the evidence was crucial to the government's case on both the larceny and unlawful entry charges and, absent such evidence, there is no proof that the accused committed those offenses. Accordingly, the findings of guilty as to Charges I and II and their respective specifications are set aside and those charges are ordered dismissed. The remaining findings of guilty are correct in law and fact and, on the basis of the entire record, are affirmed.

The sentence is set aside. A rehearing on the sentence is hereby ordered.

HODGSON, Chief Judge, FORAY, Senior Judge, and O'HAIR, Judge concur.

MURDOCK, Judge, concurs in result.

CARPARELLI, Judge, with whom SESSOMS, Senior Judge, and MICHALSKI, Judge, join, (concurring in part and dissenting in part):

I concur with the majority in affirming the findings of guilty as to Charges III and IV and their specifications. I am, however, dissenting from the majority's decision to set aside the findings of guilty of Charges I and II.

As to Charges I and II, I am satisfied that the information possessed by the search authority established probable cause to believe the accused had committed the theft as well as probable cause to believe that the accused had stored the stolen property at this temporary off-base residence. The majority, however, has concluded that the information was too stale to establish probable cause to search the residence at the time the authority to search was granted, about twenty-four days after the theft. I disagree.

Old information is not necessarily "stale." It is only stale when it does not warrant a reasonable belief as to conditions at the time of the authorization to search. *See Sgro v. United States,* 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932); *United States v. Land,* 10 M.J. 103 (C.M.A.1980); *United States v. Lovell,* 8 M.J. 613 (A.F.C. M.R.1979); Mil.R.Evid. 315(f)(2). When considering the reasonableness of the belief that a thief has retained possession of stolen property until the time of the search, courts must review all the information in the possession of the search authority supporting and undermining such belief. Because many thieves dispose of their booty rather than keep it, it is appropriate for courts to consider whether the search authority possessed information indicating that the thief had, in fact, disposed of the property. In addition, courts should consider whether the stolen property was, by its nature, likely to have been consumed or disposed of. *See United States v. Crow,* 19 U.S.C.M.A. 384, 41 C.M.R. 384 (1970); *United States v. Bright,* 2 M.J. 663 (A.F.C. M.R.1976).

When considering such matters, however, we need not and should not presume, on the basis of the mere passage of time, that a thief ever intended to dispose of the stolen property or presume that he has disposed of it. On the contrary, we must consider the nature of the evidence to be searched for, the apparent motivation and intentions of the thief, and the nature and continued viability of the place to be searched as a hiding place. In the course of such analysis courts should consider all matters reasonably known to the search authority even if the precise reasoning process has not been articulated on the record.

I am satisfied that the information in the possession of the search authority in this case provided a factual basis which would warrant a prudent person to believe that

---

**2.** We note that the Supreme Court in *Leon* relied heavily on the fact that a magistrate is neutral and detached and not an adjunct of the police authority, and that such status helps to assure adherence to the Fourth Amendment principles. We question whether our current system where-by commanders authorize searches would be similarly acceptable. *See generally, United States v. Stuckey,* 10 M.J. 347 (C.M.A.1981); Vienna and Chema, *United States v. Leon: Good Faith and the Military Commander,* 25 A.F. L.Rev. 95 (1985).

the accused was still holding the stolen stereo expander for his own use or was likely to have thus far delayed disposition of it. In addition to matters which established probable cause to believe the accused was the thief, the search authority knew that the accused had been previously convicted for larceny and that he had a temporary off-base residence near the site of the theft. He also knew that the accused was aware that the victim had reported the theft to the security police. It is fair to conclude that he also knew that the stolen stereophonic device, unlike drugs, was not consumable or immediately identifiable as contraband to a casual observer. In addition, he could, and apparently did, reasonably and properly recognize that the stereo expander was of interest and of enduring use and value to a person of the accused's age and status; that it was of such size and bulk as to limit the accused's ability to casually transport it or hide it; that prompt off-base disposal would be difficult because the property was located in a foreign country; that on-base disposal would be difficult in light of the on-going investigation and the small size of the military community; and that, as a result of these factors, the accused would run special risks if he were to attempt immediate disposition of the property. *See* 1 LaFave, Search & Seizure § 3.7 (1978).

I have no doubt, based on the record and common sense, that the search authority in this case was aware of all the information recited above. I am satisfied that a reasonably cautious person, possessing knowledge of these matters, would be justified in the belief that the accused had taken the stolen property to the off-base residence for his own use or to hide it, and that the property was still at the house at the time the search authorization was granted.

Because I am satisfied that probable cause existed, I do not address the question of the existence of the good faith exception in military practice.