UNITED STATES, Appellee

v

CHARLES D. CROW, Private, U. S. Army, Appellant

19 USCMA 384, 41 CMR 384

No. 22,480

April 24, 1970

Captain Paul C. Saunders argued the cause for Appellant, Accused. With him on the brief were Colonel Daniel T. Ghent and Captain Monte Engler.

*Captain Richard K. Bank* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger,* and *Major William A. Pope, II.*

## Opinion of the Court

FERGUSON, Judge:

We granted review in this case to consider allegations by appellate defense counsel that: (1) The law officer erred by denying trial defense counsel's motion to suppress evidence obtained as a result of an unlawful search and seizure;[1] and (2) the law officer erred in admitting a pretrial statement of the accused on the ground that the statement was obtained without a proper warning as to the accused's right to counsel.

The complained-of search was conducted by the accused's commanding officer himself, on July 14, 1968, with the assistance of a lieutenant and the first sergeant from the company. The evidence admitted at trial was found in the accused's wall locker in the company unit at Long Binh, Vietnam. By way of deposition, the commanding officer related that an agent of the Criminal Investigations Detachment informed him on July 14, 1968, that he was in receipt of a letter, sent from Vietnam to the United States, postmarked May 28, 1968, by an enlisted man named Fedor. The letter, written on the back of a DA Form 2404, mentioned that Fedor and unnamed people had been smoking marihuana. Fedor was confronted by the CID, in the presence of the commanding officer,[2] and at their request named certain individuals who he thought might be in possession of marihuana. One of those named was the accused. An inquiry was made as to other drugs and, according to the deposition, "[t]he statement was made that if anyone might have opium it would be Crow. Based upon this letter and just naming men who might be smoking marihuana and Fedor's own testimony that named Crow, I felt a shakedown of Crow's possessions was in order." The evidence, introduced at trial, was found in this search. Fedor did not tell the CID agent when Crow had used marihuana but only that it had taken place within the 534th Transportation Company, Fedor's unit. The accused had formerly been a member of the 572d, attached to the 534th, and had been transferred to the 10th Transportation Company on June 18, 1968, approximately one month prior to the date of the interview of Fedor. The commanding officer did not previously suspect the accused of using or possessing marihuana or opium.

At trial, in an out-of-court hearing, defense counsel moved to suppress the evidence found in the search on several grounds, one of these being that too long a period of time had elapsed since Fedor had reportedly smoked marihuana with the accused and the date that information was supplied to the commanding officer. In essence, he contended that since the evidence was stale, it would not support a finding of probable cause to believe that the accused possessed marihuana or opium at the time the search was conducted.

We agree. United States v Britt, 17 USCMA 617, 38 CMR 415 (1968). The rule was well stated by Mr. Chief Justice Hughes, writing for the Court

---

[1] Based on the results of the search, the accused was charged with and convicted of one specification each of possession of marihuana and opium, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. His sentence, as the case reaches this Court, extends to a bad-conduct discharge, total forfeitures, and confinement at hard labor for one year. The board of review, which affirmed without expressing an opinion on the merits of the case, noted that the bad-conduct discharge had been changed to a general discharge by order of the Secretary of the Army.

[2] The commanding officer did not ask any questions of Fedor.

in Sgro v United States, 287 US 206, 210, 211, 77 L Ed 260, 53 S Ct 138, 140 (1932), as follows:

". . . [I]t is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify *a finding of probable cause at that time.* Whether the proof meets this test must be determined by the circumstances of each case." [Emphasis supplied.]

While *Sgro* dealt with a statute which required that a search warrant be executed within ten days of issuance or be considered void, its rationale is applicable here. In *Sgro*, the Court held that an issuing magistrate could not revive a void warrant by the simple method of redating it. Rather, he had to conduct a new hearing and obtain new affidavits or depositions, in which:

". . . The proof supplied must have appropriate relation to the application for the new warrant and must speak as of the time of the issue of that warrant. The commissioner has no authority to rely on affidavits which have sole relation to a different time and have not been brought down to date or supplemented so that they can be deemed to disclose grounds existing when the new warrant is issued. The new warrant must rest upon a proper finding and statement by the commissioner that probable cause then exists. That determination, as of that time, cannot be left to mere inference or conjecture." [*Ibid.,* 287 US, at page 211.]

The Court of Appeals for the Ninth Circuit, in Durham v United States, 403 F2d 190, 193 (1968), expressed the matter thusly:

"The facts submitted to the Commissioner must be sufficient to justify a conclusion by him that the property which is the object of the search is probably on the person or premises to be searched at the time the warrant is issued. The most convincing proof that the property was in the possession of the person or upon the premises at some remote time in the past will not justify a present invasion of privacy. There must be reasonable grounds for believing that the immediate search for which authority is sought may be fruitful.

"This was made clear by the Supreme Court in Sgro v United States, 287 US 206, 210, 53 S Ct 138, 140, 77 L Ed 260 (1932), the Court stating, 'it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.' [Footnote omitted.] The principle has been applied in an unbroken line of decisions." [Extensive citations omitted.]

And in People v Siemieniec, 368 Mich 405, 118 NW2d 430 (1962), the court stated:

". . . Whether the affiant's observations are made 4, 6 or 66 days before application for a search warrant, the warrant may issue only upon a showing that reasonable cause exists to believe illegal activity is occurring at the time the warrant is sought. Just as in People v Wright . . . [367 Mich 611, 116 NW2d 786 (1962)], there was nothing in the affidavit presented in this case to indicate that the acts observed on September 13 continued to occur on September 17."

See also United States v Brown, 10 USCMA 482, 28 CMR 48 (1959); United States v Maginley, 32 CMR 842 (AFBR 1962); United States v Carver, 37 CMR 610 (ABR 1967); 4 Wharton, Criminal Law and Procedure, § 1546 (1957); 47 Am Jur, Searches and Seizures, § 23; 79 CJS, Searches and Seizures, § 73; Annotation, 100 ALR 2d 525.

In the case at bar, as noted above, the commanding officer was uncertain as to when Fedor and the ▮▮▮▮▮▮ ▮ accused had last smoked marihuana together; only that it had occurred within the 534th company, to which the accused had

386

been attached prior to his transfer to the 10th Transportation Company about one month prior to the interview and the search. Fedor himself testified at trial that he had last used drugs with the accused "approximately a month" prior to the time of the interview. Of particular importance to this case is the testimony of Fedor, in response to direct questions from the law officer, that he had *never observed marihuana in the bunk or locker area of the accused.* The last time Fedor personally smoked marihuana was three weeks prior to the interview.

The question is, as we have stated, whether there was probable cause to believe accused possessed drugs on July 14th—the date of the search—not that he possessed them at some prior time. Sgro v United States, supra. Under the circumstances presented here, we necessarily conclude there was no demonstration to the commanding officer of probable cause to search Crow's belongings and the search should not have been conducted. Sgro v United States and United States v Britt, both supra.

We need not dwell at length on the second issue for we find the accused's pretrial oral statement inadmissible in evidence as the fruit of the poison tree. The CID agent testified that immediately following the search he brought the accused to his office and questioned him regarding the material that had been found in his locker. The inculpatory admissions made by the accused at that time were reduced to writing but when he refused to sign the document and requested legal counsel, the interview was terminated.

We are of the opinion that since the oral admission followed so closely in time the illegal search, it would seem to be the direct result of exploitation by the Government of its illegal action and, hence, inadmissible. United States v Carver, supra; Wong Sun v United States, 371 US 471, 9 L Ed 2d 441, 83 S Ct 407 (1963);

United States v Penman, 16 USCMA 67, 36 CMR 223 (1966).

Holding as we do that the search was illegal, its fruits and the accused's oral pretrial admissions inadmissible, we must set the conviction aside and order the Charge and its specifications dismissed, for there remains no evidence to sustain them. Article 67(e), Code, supra, 10 USC § 867; United States v Britt; United States v Carver; and United States v Penman, all supra.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Army. The Charge and its specifications are ordered dismissed.

Judge DARDEN concurs.

QUINN, Chief Judge (dissenting):

Since the majority do not concern themselves with Fedor's reliability as an informant, it is sufficient to note that his reliability, even as a reformed marihuana and opium user, established he was not a faceless or anonymous informant. His own unit commander was present at his interview and could reasonably be expected to refute any apparent misrepresentation as to the persons and places in the unit to which Fedor referred; additionally, the accused's company commander was present and, while he did not participate in the questioning of Fedor, he could weigh Fedor's credibility from his demeanor under questioning by the Criminal Investigations Detachment agent and the consistency and apparent integrity of his answers.

Turning to the sufficiency of the facts elicited from Fedor in the interview, attended by the company commander before he undertook the search, there are a number of matters not mentioned by the majority that are, in my opinion, entitled to consideration.

Fedor engaged in "quite frequent" incidents of smoking marihuana in an area in the 534th Transportation Company. On these occasions, he went to a place "behind the company" billets.

**387**

This place was frequented by others who also smoked marihuana. In fact, "all" that anyone "ever did when" he went "back there" was to smoke marihuana. The accused was a member of the same company as Fedor and "was more frequent" in his use of the smoking area than Fedor. Fedor "smoked marihuana with" the accused in this area a "few" times. The last occasion was about two or three weeks before his interview; at that time he and the accused used opium.

About two or three weeks before the search, the accused was transferred from the 534th to the 10th Transportation Company, which was in the immediate vicinity. Fedor said that he knew the accused continued to engage in smoking marihuana "quite frequently" in the period between his transfer and the date of Fedor's interview by the CID. He gave as the basis for his knowledge the fact that he "personally observed" the accused in the smoking area "a couple of times" and that at other times members of the company would "come in" and tell him they had been smoking with the accused. In his opinion, their appearance and conduct confirmed that they had been smoking marihuana.

In my opinion, Fedor's statement indicated a course of conduct on the accused's part over a period of time, including that between the last occasion when he participated with Fedor and Fedor's interview, which gave reasonable assurance that the accused probably had marihuana in his possession. But even if the decision was "marginal," it was a decision made not by the CID agent, but the accused's company commander, and

his decision as the officer competent to order a search "may be sustainable" where one by an enforcement agent would fall. United States v Ventresca, 380 US 102, 106, 13 L Ed 2d 684, 85 S Ct 741 (1965). I would, therefore, affirm the law officer's ruling admitting into evidence the results of the search.

As to the question of the admissibility of the accused's confession, the CID agent testified that he read verbatim to the accused a statement of his rights at the interview. The statement includes the following, which is manifestly sufficient to comply with the requirements of preliminary warning as to the right to counsel, explicated in Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966), and the United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967):

"I understand that I have the right to consult with counsel and to have counsel present with me during questioning. I may retain counsel at my own expense or counsel will be appointed for me at no expense to me. If I am subject to the Uniform Code of Military Justice, appointed counsel may be military counsel of my own choice if he is reasonably available.

"I understand that even if I decide to answer questions now without having counsel present, I may stop answering question[s] at any time. Also, I may request counsel at any time during questioning."

I would affirm the decision of the board of review.