UNITED STATES, Appellee,

v.

Allen R. LAND, Specialist Four, U.S. Army, Appellant.

No. 36,223; CM 436359.

U.S. Court of Military Appeals.

Dec. 15, 1980.

For Appellant: *Captain Joseph W. Moore* (argued), *Major Grifton E. Carden* (reargued); *Colonel Edward S. Adamkewicz, Jr., Major Benjamin A. Sims* (on brief).

For Appellee: *Captain Robert D. Newberry* (argued), *Captain Rexford T. Bragaw,*

III (reargued); *Colonel R. R. Boller, Major Ted B. Borek, Captain Stephen P. Henderson, Captain Richard A. Kirby, Captain Stephen D. Smith* (on brief); *Colonel Thomas H. Davis.*

### Opinion of the Court

COOK, Judge:

Appellant stands convicted by a general court–martial consisting of a military judge alone of the possession of marihuana, wrongfully communicating a threat, and striking a person while in the execution of civil law enforcement duties, in violation of Articles 134 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 928, respectively. We granted review to determine if the military judge properly overruled a defense objection to the admissibility of the marihuana.

Brigadier General Wroth, the Augsburg Community Commander, authorized a search of appellant's apartment on March 18, 1977, which produced a large quantity of marihuana. He testified that prior to authorizing the search, he was informed by a military policeman, Sergeant Hornsby, that an informant, who had provided accurate information in the past, had notified the authorities that he (informant) had observed the accused in possession of a large quantity of hashish on March 17. Appellant had been apprehended, but a search of both his person and barracks quarters was fruitless. Subsequent to the search, a second person, identified as appellant's roommate, told Sergeant Hornsby that he also had observed the appellant in possession of a large quantity of hashish approximately two to three days prior to the search and appellant had stated to him that he kept a quantity of hashish in his off–post apartment. On cross–examination by defense counsel, General Wroth was asked whether it did not "strike . . . [him] as odd" that appellant was purported to have an off–post apartment, although he occupied a barracks room. He responded that it did not because he had "knowledge of a number of cases where similar situations have existed." Hornsby advised General Wroth that

he believed the roommate was reliable because he had been questioned in the presence of an officer assigned to his unit and that officer gave indications of his belief that the roommate was telling the truth. Additionally, Hornsby noted that the appellant had been suspected of "drug dealing" for some time.

 Appellant attacks the legality of the search of his apartment on several grounds. First, he asserts that a commanding officer is *per se* disqualified from authorizing a search. We rejected a contention of *per se* disqualification in *United States v. Ezell,* 6 M.J. 307 (C.M.A.1979). Secondly, he maintains that General Wroth decided to authorize the search on the basis of the opinion of another officer instead of exercising his own judgment. The General knew that a legal officer, for whose "professional judgment" he had great regard, had expressed the opinion that probable cause had been established but his testimony clearly demonstrates that he "formed . . . [his] own judgment" on the matter. Thirdly appellant asserts that the general's authorization was defective because the information given to him was not submitted under oath or affirmation. No such requirements pertained to a search conducted during the period in issue. *See United States v. Fimmano,* 8 M.J. 197 (C.M.A.1980), *pet. for reconsideration not granted,* 9 M.J. 256 (C.M.A.1980). Finally, appellant contends that the information submitted to General Wroth was insufficient to establish probable cause from several points of view.

 First, the appellant contends that the evidence of possession in the barracks was insufficient to establish probable cause for a search of the off–post apartment. *See United States v. Troy,* 22 U.S.C.M.A. 195, 46 C.M.R. 195 (1973); *United States v. Lidle,* 21 U.S.C.M.A. 455, 45 C.M.R. 229 (1972). The evidence, however, indicates that appellant had been seen in possession of a large quantity of hashish immediately prior to the search of the barracks and none had been found on his person or in the barracks. The likelihood that it was cached elsewhere was therefore great. *See United*

States v. Walters, 22 U.S.C.M.A. 516, 48 C.M.R. 1 (1973). The roommate stated that appellant had an off–base apartment and that the appellant had told him that he kept hashish there. General Wroth expressly indicated it was not uncommon for a serviceperson with assigned barracks quarters to maintain an off–base apartment. We are convinced, therefore, that the totality of the information considered by General Wroth supports his conclusion that hashish was probably in appellant's apartment.

▇▇▇ Secondly, appellant maintains that even if the apartment was a likely place for hiding the hashish, the evidence of possession was too stale to justify a conclusion that the substance was still likely to be there at the time of the search. Logically, the longer the period of time from an observed possession of a drug to the application for authority to search, the less the probability of continued possession. But lapse of time is not alone determinative. In United States v. Crow, 19 U.S.C.M.A. 384, 387, 41 C.M.R. 384, 387 (1970), the Court held that in "the circumstances" of that case an interval of one month between a witnessed possession and the request for a search was too long to give reasonable assurance that the accused possessed the drug at the time of the authorization to search. Here, only two or three days before the application to search, appellant had told his roommate that he hid hashish in his apartment. The quantity seen in the accused's possession about that time was substantial. In these circumstances we are satisfied that General Wroth could reasonably conclude, as he did, that some hashish was probably in appellant's apartment.

The last aspect of this ground of appellant's challenge is that the evidence of the roommate's reliability is insufficient to meet the standard required by the United States Supreme Court in Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1513, 12 L.Ed.2d 723 (1964). Government counsel perceive appellant's roommate to be a "citizen informant" and, therefore, presump-

tively reliable. See United States v. Melvin, 596 F.2d 492 (1st Cir. 1979), cert. denied, 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979); United States v. Burden, 5 M.J. 704, 708 N. 6 (A.F.C.M.R.1979). In United States v. Lidle, supra at 457, 45 C.M.R. at 231, this Court distinguished between "an unnamed member of the underworld . . . [and] a known, reputable member of the authorizing officer's command." See United States v. Crow, supra at 387, 41 C.M.R. at 387 (Quinn, C. J., dissenting).

▇▇ As Judge Fletcher notes in his opinion, there is evidence indicating that the roommate may not be the kind of law–abiding person envisaged by the description "citizen informant" and, therefore, should not be entitled to a presumption of reliability. There is, however, substantial evidence of actual reliability in regard to the report submitted to General Wroth. The roommate "was not a faceless or anonymous informant," id.; and he gave his information in the presence of an officer of his unit, which, as Judge Fletcher observes, was likely to have "a truth–telling effect" upon him. See United States v. Harris, 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971); United States v. Crow, supra. We are satisfied that General Wroth was warranted in concluding that the roommate was reliable.

The decision of the United States Army Court of Military Review is affirmed.

FLETCHER, Judge (concurring):

I concur with the opinion of my Brother, Judge Cook.

The critical issue in this case is the propriety of General Wroth's probable cause determination. The appellant first contends that General Wroth had insufficient information before him to determine whether Thomas, the appellant's roommate, was a credible or a reliable person.[1] The Government asserts that the appellant's roommate was not a professional informant but a citizen witness to a crime. Therefore,

1. See United States v. Guerette, 23 U.S.C.M.A. 281, 284–85, 49 C.M.R. 530, 533–34 (1975); United States v. Llano, 23 U.S.C.M.A. 129, 48 C.M.R. 690 (1974).

it argues that he can be *presumed* to be reliable, or in the alternative, a lesser showing of reliability is required for him.[2]

As a matter of military law, it has not yet been decided that a presumption of reliability exists for the citizen informant as compared to the professional informant. Significant law from state and federal courts accepts this presumption or, at least, supports a lesser showing of reliability for a crime witness or victim.[3] Nevertheless, a healthy skepticism remains where this purported law abiding citizen gives information concerning the use or display of narcotics.[4] Indeed, the Supreme Court itself has noted the greater reliability of citizen witnesses in tax cases as compared to those in narcotic cases.[5] In any event, there are special circumstances here which would rebut any such presumption of reliability in this case.

Thomas was a citizen witness to a narcotics display on two occasions, one by his own testimony two or three days earlier and a second, one day earlier, by informant I's testimony. His presence on the drug scene was more than by accident. Moreover, Thomas did not come forward with his testimony on his own initiative. He was called into a room by a police officer, along with his executive officer and two noncommissioned officers, and was subject to police questioning. Additionally, the record indicates that Hornsby, the police interrogator, suspected Thomas was involved in narcotics, but ignored his suspicion for this particular questioning. Finally, General Wroth treated this unnamed roommate as a police informant and he was not characterized by Hornsby, who sought the search authorization, as a law–abiding citizen.

Assuming no presumption of reliability as a citizen witness is applicable in this case to the appellant's roommate, a question exists as to what type of showing of reliability the Government should make for a person like Thomas.[6] The above stated facts which argue against the application of a presumption being utilized in this case also argue against any lesser requirement for reliability being invested in a person in Thomas' situation. They indicate that Thomas clearly enjoyed the confidence of criminal[7] or was a person in the underworld or its periphery, or so much a part of the scenery to the criminal that he in particular was in a good position to know the story of the crime committed.[8] In such a situation the Government should be required to meet the standards for reliability of an informant contained in *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Accordingly, in light of *Aguilar v. Texas, supra*, it must appear on the record that General Wroth had a sufficient basis for determining that Thomas was credible or his information was reliable on this occasion.

This requirement of credibility refers to the on–going character of the informant as a person–his reputation as a truth speaker or his demonstrated history of truth speaking.[9] There is no evidence in the record of trial which would show that General Wroth had any information on this issue with respect to the unnamed roommate of the appellant.

In the alternative, the record of trial must be scanned for matters presented to

**2.** *See United States v. Melvin*, 596 F.2d 492 (1st Cir. 1979), *cert. denied*, 444 U.S. 837 (1979); *United States v. Burden*, 5 M.J. 704, 708 n. 6 (A.F.C.M.R.1978). *See generally Jaben v. United States*, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965).

**3.** *See* LaFave, *Search and Seizure*, Vol. I, § 3.4(a), pp. 586–602 (1978).

**4.** LaFave, *supra* at 600–01.

**5.** *Jaben v. United States, supra*.

**6.** *See United States v. Melvin, supra; United States v. Burden, supra*.

**7.** *See United States v. Harris*, 403 U.S. 573, 586, 91 S.Ct. 2075, 2083, 29 L.Ed.2d 723 (1971) (Harlan, J., dissenting).

**8.** LaFave, § 3.3 *supra* at 499.

**9.** LaFave, *supra* at 522.

General Wroth showing that the information provided by Thomas on this particular occasion was reliable or trustworthy.

This is a difficult question in light of the above–mentioned factors in this case, but it must be resolved in the government's favor. Thomas was not an unknown person in the street. *Cf. Recznik v. City of Lorain*, 393 U.S. 166, 89 S.Ct. 342, 21 L.Ed.2d 317 (1968). It is clear that, though unnamed, this informant was identified to General Wroth as the on–base roommate of the appellant. In this position, he clearly had the opportunity to observe the appellant as well as hear him speak. *See United States v. Harris, supra.* Moreover, it would not be unreasonable for General Wroth to conclude that the appellant's roommate in such a situation would not be likely to lie if he incriminated the appellant. Additionally, the record does not indicate that General Wroth was informed of any suspicion as to Thomas' criminal activities and that the latter conceivably had any motive to falsify his information. *See Jaben v. United States*, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965). Finally, General Wroth knew that Thomas had answered these questions in front of the executive officer of his unit who can be presumed to have a truth–telling effect on his subordinate. *See United States v. Harris, supra.* A common sense interpretation of these facts would lend themselves to a practical determination by General Wroth that Thomas was reliable within the meaning of *Aguilar v. Texas, supra. See United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

The defense also asserts that General Wroth was not sufficiently apprised of the underlying circumstances from which Thomas, the appellant's roommate, knew drugs were in the appellant's off–base apartment.[10] He notes that there is no indication in the record that Thomas was ever at appellant's off–base apartment or saw any drugs there.

This argument is without merit. Sergeant Hornsby told General Wroth that Thomas was the appellant's on–base roommate. He also related to the General that Thomas saw the appellant two or three days earlier with hashish (50 grams) and that the appellant wanted to know people who desired to buy drugs. Finally, the General knew the appellant had told Thomas that he had more drugs at his off–base apartment.

This information was based on direct observations of Thomas and personal conversation with the appellant. It is first–hand information as to what the appellant said and did in Thomas' presence. He detailed the type of drug in appellant's possession in the on–base apartment. This satisfies the "basis of knowledge" requirement of *Aguilar v. Texas, supra*, as to what this informant reported.

The ultimate conclusion that drugs were at appellant's off–base apartment was drawn by Sergeant Hornsby and General Wroth after viewing the totality of information provided to them. This included the information from the informants, military and foreign police files concerning appellant's suspected drug activities, and the existence of appellant's off–base apartment. A search of the appellant's on–base apartment was fruitless. Accordingly, this was a reasonable and proper conclusion made by General Wroth.

EVERETT, Chief Judge (concurring):

In accordance with the rationale cogently developed in the principal and concurring opinions, I agree that probable cause was established.

---

10. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); para. 152, Manual for Courts–Martial, United States, 1969 (Revised edition). *See United States v. Hood*, 7 M.J. 128, 129–30 (C.M.A.1979).