# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM S32360

————————————

## UNITED STATES
*Appellee*

**v.**

## Brandon M. HARDEE
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 17 April 2017

————————————

*Military Judge:* Shelly W. Schools.

*Approved sentence:* Bad-conduct discharge, confinement for six months, forfeiture of $1301.00 pay per month for six months, and reduction to E-1. Sentence adjudged 15 October 2015 by SpCM convened at Little Rock Air Force Base, Arkansas.

*For Appellant:* Major Johnathan D. Legg, USAF.

*For Appellee:* Major J. Ronald Steelman III, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, HARDING, and C. BROWN, *Appellate Military Judges*.

Judge HARDING delivered the opinion of the Court, in which Senior Judge MAYBERRY and Judge C. BROWN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

HARDING, Judge:

Consistent with his pleas pursuant to a pretrial agreement, Appellant was convicted by a military judge sitting alone of one specification of wrong-

ful use of cocaine on divers occasions, and one specification of wrongful use of anabolic steroids on divers occasions, both in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. A specification of assault and battery in violation of Article 128, UCMJ, 10 U.S.C. § 928, was dismissed in accordance with the pretrial agreement. Appellant was sentenced to a bad-conduct discharge, confinement for six months, forfeiture of $1301.00 pay per month for six months, and reduction to E-1. The convening authority approved the sentence as adjudged.

Appellant raises two issues on appeal, both predicated on his asserted lack of knowledge that his guilty plea waived appellate review of a suppression motion concerning the results of a search of his urine and cellular phone. First, Appellant claims his counsel were ineffective when they advised him to enter into a pretrial agreement and plead guilty without informing him that an unconditional guilty plea waived appellate review of the motion. Second, he argues the military judge abused her discretion in accepting his guilty plea without discussing on the record that an unconditional plea waived appellate review of the same motion to suppress. As we find no error materially prejudices a substantial right of this Appellant, we now affirm.

## I. BACKGROUND

On 15 February 2015, after receiving information from a confidential source that Appellant had used cocaine two days earlier on 13 February 2015, Air Force Office of Special Investigations (AFOSI) Special Agent (SA) HT sought and obtained an oral search authorization from the Little Rock Air Force Base military magistrate. Specifically, SA HT informed the magistrate that the confidential source directly observed Appellant possess and use some amount of cocaine in a nightclub restroom. Appellant, after snorting the cocaine, wiped the cocaine residue with his finger and placed it in the source's mouth.[1]

SA HT also informed the magistrate that the source overheard Appellant make the following statements in late January 2015: (1) "I feel like doing coke right now and I do coke when I am drunk," and (2) "I have been doing coke since I have been in the military." SA HT further relayed information the source provided regarding Appellant's text messages describing potential drug transactions. The source reported observation of Appellant's text mes-

---

[1] This action by Appellant was the basis for a single charge and specification of assault and battery in violation of Article 128, UCMJ, 10 U.S.C. § 128. This charge and its specification were dismissed pursuant to Appellant's pretrial agreement with the convening authority.

sages to his dealer requesting a purchase of cocaine and described text messages sent to the source's phone from Appellant about purchasing cocaine.

In addition to the information provided by this confidential source, SA HT also informed the magistrate of a statement made by Appellant's girlfriend in January 2015 implicating Appellant in cocaine use. The girlfriend's statement was that Appellant no longer drank alcohol because it made him angry but now ingested cocaine. This statement was overheard and reported by a witness independent of the confidential source, a staff sergeant assigned to the security forces squadron. In fact, this reported statement preceded the information provided by the source and resulted in the initiation of the investigation of wrongful drug use by Appellant.

At the conclusion of the telephonic discussion with SA HT, the military magistrate authorized SA HT to search Appellant's phone for evidence of drug use and to obtain urine and blood samples from Appellant for drug testing.

By the time of the suppression motion hearing, wherein Appellant challenged the sufficiency of the probable cause for the searches, the military magistrate did not specifically recall all the details about the source provided by SA HT in support of the oral search authorization. He did, however, describe that his standard procedure prior to issuing authorizations based on information from a confidential source was to ask questions about the source's reliability and trustworthiness. SA HT testified that he provided details about the source to the magistrate upon which he could draw an independent conclusion about the source's reliability.

The source was later disclosed to be Senior Airman (SrA) JG, a reservist attached to a unit at Little Rock Air Force Base. When the investigation began SrA JG was on active duty orders to attend Airman Leadership School. The magistrate was told she came forward voluntarily to AFOSI to report what she overheard Appellant say about his cocaine use in late January and to report the content of his text messages as it concerned his use and attempted purchase of cocaine. AFOSI conducted a criminal background check on SrA JG which disclosed no derogatory information or reason for them to question her reliability or motives. This information was also provided to the magistrate. By mid-February, when SrA JG reported Appellant's cocaine use in the rest-room, her orders to active duty had expired.

After considering the information SA HT told him over the phone on 15 February 2015, both the basis of the source's knowledge and information about the source herself, along with Appellant's girlfriend's statement about his cocaine use, the military magistrate gave oral authorization for the seizure and search of Appellant's urine, blood, and cellular phone. The search of Appellant's cellular phone revealed incriminating text messages concerning

Appellant's use of cocaine and steroids. Appellant's urine sample tested positive for a metabolite of cocaine.

On 16 February 2015, the military magistrate followed up on the oral authorization and executed the written authorization for the search and seizure. On 17 February 2015, SA HT executed the supporting probable cause affidavit for the authorization. The affidavit contained a summary of the information he provided to the magistrate orally two days earlier. As a means of protecting SrA JG's identity, SA HT used the word "sources" in the affidavit when referring to information provided by SrA JG.

At trial, Appellant made a motion to suppress the search results arguing there was "no substantial basis for probable cause in the affidavit" and that the "affidavit [was] intentionally misleading." The military judge denied the motion to suppress. The court recessed and by the next day a pretrial agreement had been executed between Appellant and the convening authority.

In the pretrial agreement, the convening authority agreed to withdraw and dismiss the assault and battery charge and not to approve confinement in excess of six months. Appellant offered to: (1) plead guilty to the two specifications of wrongful drug use; (2) elect trial by judge alone; (3) cooperate with law enforcement investigations of wrongful drug use by other servicemembers; (4) testify in any future judicial proceedings against certain named individuals and any other servicemember about whom the Appellant had information; (5) not request production of any additional witnesses at government expense; and (6) enter into a reasonable stipulation of fact.

Although a term requiring Appellant to "waive all waivable motions" appeared in an earlier draft of the agreement, Appellant's counsel successfully had this term deleted from the final pretrial agreement. The pretrial agreement, however, did not provide that Appellant's offer to plead guilty was conditioned on preservation of appellate review of the motion to suppress or any other motion.

In an affidavit executed by Appellant and attached to the record in conjunction with his assignment of errors, Appellant made the following declaration:

> I have no memory that any of my trial defense counsel explained to me the meaning of an "unconditional plea" of guilt. In fact, it is my belief that I was advised by my defense counsel that I would be able to raise on appeal the motion to suppress that was litigated at trial prior to my plea of guilt. If I had known that I would be giving up the motion to suppress, I would have attempted to negotiate for a conditional plea that reserved the right to raise this motion on appeal. If a condi-

tional plea could not be negotiated, I would have plead not guilty in order to preserve this motion for appeal.

Appellant's lead trial defense counsel, QM, provided in his affidavit that Appellant's "recollection that we specifically discussed him being able to appeal the denial of the motion to suppress is accurate." QM's affidavit also provides more context to the significance that the trial defense team attached to the absence of the "waive all waivable motions" term in the pretrial agreement. His affidavit states that the defense team discussed internally, and with Appellant, "that this [waive all waivable motions] provision had to be removed with government counsel's approval, and that the judge would then have to approve the [pretrial agreement] in order to preserve [Appellant's] right to appeal the denied motion to suppress." As highlighted above, the "waive all waivable motions" term was not included in the signed pretrial agreement.

In accordance with the pretrial agreement, Appellant elected the forum of trial by judge alone and entered pleas of guilty to the specifications of wrongful use of cocaine and anabolic steroids, both on divers occasions. The military judge subsequently conducted guilty plea and pretrial agreement inquiries. There was no discussion on the record that the guilty plea was unconditional or that the guilty plea waived Appellant's motion to suppress. Nor did Appellant or his counsel assert their apparent belief that the absence of the "waive all waivable motions" provision had the effect of preserving the litigated motion to suppress for appellate review. Unaware of any mistaken belief by Appellant that the motion to suppress was preserved for appellate review, the military judge approved the pretrial agreement, found Appellant's guilty plea provident, and accepted Appellant's plea of guilty. After the announcement of the sentence, the military judge ensured the assault and battery charge and specification was withdrawn and dismissed prior to adjourning the court.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

Appellant claims his counsel were ineffective when they negotiated the pre-trial agreement without advising him that an unconditional guilty plea waived appellate review of the motion to suppress the results of the searches of his urine and cellular phone. Finding no deficiency in counsel's perfor-

mance that resulted in prejudice, we deny Appellant's claim of ineffective assistance of counsel.[2]

## 1. The *Strickland* Test as Applied to a Guilty Plea

This court reviews a claim of ineffective assistance of counsel de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011). We undertake a two-part inquiry informed by the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984). "To prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361–62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687). In reviewing for ineffectiveness, the court "looks at the questions of deficient performance and prejudice de novo." *United States v. Gutierrez*, 66 M.J. 329, 330–31 (C.A.A.F. 2008).

In the guilty plea context, the first part of the *Strickland* test remains the same—whether counsel's performance fell below a standard of objective reasonableness expected of all attorneys. *Hill v. Lockhart*, 474 U.S. 52, 56–58 (1985). The second prong is modified to focus on whether the "ineffective performance affected the outcome of the plea process." *Id.* at 59; *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012). It is not necessary to decide the issue of deficient performance when it is apparent that the alleged deficiency has not caused prejudice. *See Loving v. United States*, 68 M.J. 1, 2 (C.A.A.F. 2009).

"[T]o satisfy the 'prejudice' requirement, [Appellant] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. That requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citations and quotation marks omitted). "When an appellant argues that counsel was ineffective for erroneously waiving a motion, it makes sense to deny the claim if the appellant would not be entitled to relief on the erroneously waived motion, because the accused cannot show he was harmed by not preserving the issue." *United States v. Bradley,* 71 M.J. 13, 17 (C.A.A.F. 2012).

In this case, Appellant asserts that he was harmed or prejudiced by losing the opportunity to appeal the military judge's ruling. Implicitly, Appellant

---

[2] The affidavits provided by all three trial defense counsel unanimously support that it was their intention to negotiate a conditional plea. However, they did not take the necessary steps in accordance with Rule for Courts-Martial 910(a)(2) to effectuate a conditional plea. Accordingly, their actions were deficient, but we find no prejudice.

argues that had his pretrial motion been successful in suppressing the results of the search of his phone and the urinalysis, he would have pleaded not guilty to and contested the wrongful drug use specifications. Therefore, after losing the motion at trial, Appellant asserts that had he understood that an unconditional guilty plea waived the suppression issue he would not have entered such a plea. He claims he would have either entered a conditional guilty plea or a plea of not guilty to preserve the suppression issue. Applying the harmless erroneous waiver approach of *Bradley* to this case, if Appellant would not be entitled to relief on an appeal of the motion to suppress, then there is no prejudice and the claim of ineffective assistance of counsel fails. Therefore, to assess the viability of his claim of ineffective assistance of counsel, we now conduct review of the very issue that was waived by Appellant's unconditional guilty plea.

## 2. Motion to Suppress Drug Test Results and Cellular Phone Contents

Appellant's motion at trial to suppress the search results rested on two separate, but related, grounds focused on the confidential source. Appellant argued the there was "no substantial basis for probable cause in the affidavit" because SA HT's affidavit provided inadequate indicia of reliability for the confidential source and also that the "affidavit [was] intentionally misleading" about the number of sources. We disagree with Appellant on both counts and conclude that he would not have been entitled to relief on appeal.

This court reviews a military judge's ruling on a motion to suppress for abuse of discretion. *United States v. Cote*, 72 M.J. 41, 44 (C.A.A.F 2013); *see also United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *White*, 69 M.J. at 239 (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)). An abuse of discretion occurs when the findings of fact are clearly erroneous or the conclusions of law are based on an erroneous view of the law. *United States v. Hollis*, 57 M.J. 74, 79 (C.A.A.F. 2002). As such, the findings of fact are reviewed under the clearly erroneous standard and conclusions of law are reviewed de novo. *Cote*, 72 M.J. at 44. "On questions of fact, [we ask] whether the decision is *reasonable*; on questions of law, [we ask] whether the decision is correct." *United States v. Baldwin*, 54 M.J. 551, 553 (A.F. Ct. Crim. App. 2000) (en banc) (alterations in original) (citation omitted), *aff'd*, 54 M.J. 464 (C.A.A.F. 2001).

The fundamental question raised in Appellant's motion to suppress was whether, based on the information orally provided to the magistrate by SA HT, probable cause existed to support the oral authorization to seize and search Appellant's cellular phone, blood, and urine. Appellant's primary ar-

gument was that probable cause was lacking due to insufficient evidence provided to the military magistrate of the confidential source's reliability.

The Supreme Court, in *Illinois v. Gates,* 462 U.S. 213 (1983), made clear that a totality of the circumstances analysis informs probable cause determinations. The Court abandoned the more rigid "two-pronged test" of their prior decisions that strictly required information be provided the magistrate to establish the reliability of an informant. *See Aguilar v. Texas*, 378 U.S. 108, (1964); *Spinelli v. United States*, 393 U.S. 410, (1969)). In *Gates*, they stated:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . [concluding]" that probable cause existed.

*Gates*, 462 U.S. at 238 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)) (alterations in original).

The *Aguilar* two-pronged test that required an affidavit adequately reveal the "basis of knowledge" and "veracity" of the affiant's informant was recast "as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233.

In *United States v. Bethea*, 61 M.J. 184 (C.A.A.F. 2005), the Court of Appeals for the Armed Forces (CAAF) reiterated the totality of the circumstances test to determine whether these is a substantial basis for probable cause and also summarized Supreme Court decisions describing what probable cause actually requires in terms of a level of proof.

> The Supreme Court has emphasized that "probable cause is a flexible, common sense standard." A probable cause determination merely requires that a person of "reasonable caution" could believe that the search may reveal evidence of a crime; "*it does not demand any showing that such a belief be correct or more likely true than false*." So even though "people often use 'probable' to mean 'more likely than not,' probable cause does not require a showing that an event is more than 50% likely."

*Bethea*, 61 M.J. at 187 (footnotes omitted).

In his written motion at trial, while acknowledging that *Gates* had abandoned a strict requirement to demonstrate the reliability of an informant, Appellant nonetheless cited *United States v. Edie*, 5 M.J. 647 (A.F.C.M.R. 1978), a pre-*Gates* decision of this court for the proposition "that in Air Force cases the reliability of the informant *must* be established in the affidavit." (Emphasis added). To the extent that Appellant asserts *Edie* compels a strict reliability requirement for his case, we disagree. The opinion in *Edie* merely restated what the Supreme Court had held in *Aguilar* prior to its decision in *Gates* and reflected how *Aguilar* had been incorporated into the 1969 *Manual for Courts-Martial* (*MCM*). The 1969 *MCM* provided:

> Probable cause for ordering a search exists when there is reason to believe that items of the kind indicated above as being properly the subject of a search are located in the place or on the person to be searched. Such a reasonable belief may be based on information which the authority requesting permission to search has received from another if the authority ordering the search has been apprised of some of the underlying circumstances from which the informant concluded that the items in question were where he claimed they were and *some of the underlying circumstances from which the authority requesting permission to search concluded that the informant, whose identity need not be disclosed, was credible or his information reliable.*

*MCM, United States*, Ch. 27, ¶ 152 (1969 ed.) (emphasis added).

When Military Rule of Evidence 315(f)(2)[3] was promulgated along with the Military Rules of Evidence in the 1984 *MCM*, the entirety of the second sentence from the 1969 *MCM* rule was deleted and replaced based on *Gates*.

---

[3] *Probable cause determination.* Probable cause to search exists when there is a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched. A search authorization may be based upon hearsay evidence in whole or in part. A determination of probable cause under this rule shall be based upon any or all of the following:

(A) Written statements communicated to the authorizing officer;

(B) Oral statements communicated to the authorizing official in person, via telephone, or by other appropriate means of communication; or

(C) Such information as may be known by the authorizing official that would not preclude the officer from acting in an impartial fashion.

*MCM*, app. 21 at A21-84 (1984 ed.). So while "basis of knowledge" and "veracity" are relevant considerations to those deciding the existence of probable cause, it is not an exclusive test.

In *United States v. Tipton*, 16 M.J. 283 (C.M.A. 1983), one of the earliest military cases citing *Gates*, the court applied the totality of circumstances test in a case where the reliability of the informant was at issue. Noting there exists "a degree of accountability in a military environment that is unparalleled in civilian society" and that as such servicemembers are "in a poor position to fabricate with impunity," the court advanced military accountability as a factor to be considered in the totality of the circumstances. *Id.* at 287. They also "recognized the unique 'truth-telling effect' of an identified servicemember's giving information in the presence of a superior officer," *id.* (citing *United States v. Land*, 10 M.J. 103, 105, 107 (C.M.A. 1980)), and that "this same salutary effect is present when the authority is a military police officer," *id.* (citing *United States v. Harris,* 403 U.S. 573, 593 (1971)). In *Tipton*, the court found that "in the totality of the circumstances that [the informant's] 'accountability' was sufficient to overcome his lack of proven reliability." *Id.*

The military judge in this case found that in the totality of the circumstances, the information orally provided to the military magistrate established probable cause to search and seize Appellant's urine, blood, and cell phone for evidence of drug use. We agree.

In further explaining her rationale, the military judged stated that "[b]ecause the key information did come from a single confidential source, [SA HT] was required to establish the source's reliability before [the magistrate] granted authorization." To the extent she imposed a strict reliability requirement reminiscent of *Aguilar* and *Edie*, she erred in favor of Appellant. However, her ruling could be construed to simply state what was required given the totality of the circumstances in this particular case. On this point, the military judge did find "by a totality of the circumstances that there is sufficient information regarding the reliability of the informant in this case." In reaching this conclusion she noted: (1) that the military magistrate's practice was to ask questions about the reliability of confidential informants; (2) that SA HT told the magistrate that the source had been working with AFOSI throughout the investigation; (3) that the source came forward of her own volition; and (4) that SA HT told the magistrate that the source had no motive to lie. The record also established that SA HT had informed the military magistrate that a criminal background check disclosed no derogatory data on the source. Additionally, Appellant's girlfriend's statement about his cocaine use, overheard by another witness, provided independent corroboration of the source's information that Appellant used cocaine. As noted above, the source's information about Appellant's cocaine use included his past oral

statements she heard, his past text messages she saw, and direct observation of his use two days earlier.

Having considered the totality of the circumstances to include the information regarding the reliability of the source, the basis of source's knowledge, and the girlfriend's statement, we independently find there was probable cause to search and seize Appellant's urine, blood, and cell phone for evidence of drug use.

Appellant also attacks the military judge's reliance on the holding in *Tipton* that "an informant's accountability as a military member was sufficient to overcome lack of proven reliability" as a buttress to her ruling. Appellant, relying on the expiration of the confidential source's active duty orders prior to her report of Appellant's cocaine use, construes the military judge's reliance on *Tipton* as erroneous and an abuse of discretion. Appellant essentially argues that the military accountability switch was clicked off due to the source returning to her reserve status and therefore statements made by her during that timeframe were not imbued with reliability. As to this argument, we note that the information that the source initially provided with regard to Appellant's oral statements and text messages were provided while she was still on active duty orders and subject to military accountability. Further, while we recognize the degree of military accountability is diminished for a reservist in a civilian as compared to active status, the "truth-telling effect" for military members, active and reserve, is not so easily donned and doffed as one's uniform. To the extent that the full measure of reliability was not realized due to her reverting to reserve status, we still find that in the totality of the circumstances, even absent considerations of strict military accountability to reinforce the finding of reliability, there was probable cause to search and seize Appellant's urine, blood, and cell phone for evidence of drug use.

Finally, as noted above, Appellant also argued the "affidavit [was] intentionally misleading." To support the claim that the affidavit was intentionally misleading, Appellant took issue with SA HT's repeated use of the word "sources" in the affidavit when, in fact, only one source had observed the actions of Appellant. Appellant argues that using "sources" in the affidavit intentionally misled the military magistrate to believe that there were at least two witnesses to his cocaine use. Appellant requested the military judge conduct a *Franks*[4] hearing on the matter.

---

[4] In *Franks v. Delaware*, 438 U.S. 154, 155–56 (1987), the Supreme Court held,

*(Footnote continues on next page)*

In her findings of fact, the military judge found that during the telephone call on 15 February 2015, SA HT informed the military magistrate of the details summarized in the affidavit and also told him that the confidential source was just one person. She further found that: (1) "there is no evidence, direct or circumstantial, that [SA HT] intentionally withheld relevant information from the magistrate, or misled him;" and (2) "[t]he use of the words [sic] 'sources' was simply a way to mask the identity of the confidential informant and it is permissible." None of the military judge's findings of fact are clearly erroneous and instead are fully supported by the record. Further, based on our review we agree with her legal conclusion that the affiant did not include a false statement in the affidavit knowingly and intentionally or with a reckless disregard for the truth.

We, therefore, conclude that had Appellant's motion to suppress been preserved for appeal either by a plea of not guilty or by conditional guilty plea, Appellant would not have been entitled to relief upon appellate review. Therefore, he was not prejudiced by an erroneous waiver of the motion to suppress. As Appellant cannot show that he was harmed by the alleged deficient performance of his counsel, his claim of ineffective assistance of counsel is denied.

**B. Acceptance of Appellant's Guilty Pleas**

Appellant also avers that the military judge abused her discretion in accepting his plea of guilty without an inquiry on the record that Appellate understood he had entered an unconditional plea that waived appellate review of the motion to suppress. Specifically, Appellant argues that the military judge had an obligation to advise him that his plea of guilty was unconditional and waived appellate review of the motion to suppress. We disagree.

---

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to finding the probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

This rule is codified in Military Rule Evidence 311(d)(4)(B).

Assuming *arguendo* that the military judge abused her discretion by: (1) not specifically advising Appellant that his guilty plea was unconditional and waived the suppression issue, (2) not ensuring that he understood this effect of his guilty plea, and (3) not confirming that Appellant, understanding his suppression was waived by a plea of guilty, still wanted to plead guilty, we find any error by the military judge harmless.

The standard for reviewing a military judge's decision to accept a plea of guilty is an abuse of discretion. *United States v. Inabinette,* 66 M.J. 322 (C.A.A.F. 2008). A military judge abuses her discretion if she accepts a guilty plea without an adequate factual basis to support the plea. *Id.* In contrast, the military judge's determinations of questions of law arising during or after the plea inquiry are reviewed de novo. *Id.* In reviewing a military judge's acceptance of a plea for an abuse of discretion, appellate courts apply a substantial basis test: Does the record as a whole show "'a substantial basis' in law and fact for questioning the guilty plea." *Id.* (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)).

As Appellant has raised an issue with legal aspects of the military judge's duties during the plea and pretrial agreement inquiries, and not with the adequacy of the factual inquiry, it is appropriate to apply a de novo standard. Appellant claims that "[g]iven that the [pre-trial agreement] was negotiated following the denial of substantial litigation on a motion to suppress, the military judge should have inquired whether [Appellant] understood he was entering into an unconditional plea that waived his motion to suppress." The question raised then is whether the military judge had such a duty in this case.

Rule for Courts-Martial (R.C.M.) 910 is one source for the duties of a military judge as it regards mandatory advice to an accused in the context of a guilty plea and details a number of specific requirements. R.C.M. 910 does not expressly require a military judge to advise an accused that an unconditional guilty plea waives all nonjurisdictional matters.

In *United States v. Benavides*, 57 M.J. 550, 553 (A.F. Ct. Crim. App. 2002), this court observed, "Although military judges do not typically warn an accused that an unconditional plea waives all nonjurisdictional matters, this is well known to military counsel." Indeed, waiver of nonjurisdictional defects by an unconditional plea of guilty is a long-standing feature of both federal and military criminal procedure. *United States v. Joseph*, 11 M.J. 333, 335 (C.M.A. 1981); *United States v. Lopez*, 42 C.M.R. 268, 270 (1970); *United States v. Rehorn*, 26 C.M.R. 267, 268–69 (1958); *United States v. Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008). R.C.M. 910(j) plainly and concisely states that "a plea of guilty which results in a finding of guilty waives any

objection, whether or not previously raised, insofar as the objection relates to the factual issue of guilt of the offense(s) to which the plea was made."

Even though there is not an express requirement that military judges, as a matter of course, provide an advisement that a guilty plea waives all nonjurisdictional matters, and that counsel are presumed to know this, there are circumstances where a judicial advisement may be appropriate.[5] In *United States v. Pena*, 64 M.J. 259 (C.A.A.F. 2007), the appellant claimed misunderstanding of a collateral consequence of an early release program as the basis for challenging the providency of his plea. The CAAF stated, "As a general matter, the military judge does not have an affirmative obligation to initiate an inquiry into early release programs as part of the plea inquiry" and articulated what circumstances an appellant must demonstrate to confer upon a military judge a duty to inquire. *Id.* at 267. While the nonjurisdictional defects directly waived by a guilty plea are categorically different than the collateral consequences of a court-martial, the approach applied in *Pena* provides a helpful framework in identifying circumstances where failure by a military judge to inquire may be an abuse of discretion. The CAAF stated:

> When the challenge concerns an appellant's claimed misunderstanding of the collateral consequences of a court-martial, such as an early release program, an appellant must demonstrate that the collateral consequences are major and the appellant's misunderstanding of the consequences (a) results foreseeably and almost inexorably from the language of a pretrial agreement; (b) is induced by the trial judge's comments during the providence inquiry; or (c) is made readily apparent to the judge, who nonetheless fails to correct that misunderstanding. In short, chief reliance must be placed on defense counsel to inform an accused about the collateral consequences of a court-martial conviction and to ascertain his willingness to accept those consequences.

---

[5] In footnote 3 of *Benavides,* we offered that "[j]udges might want to begin including a general statement during the guilty plea inquiry that informs an accused that an unconditional guilty plea waives nonjurisdictional issues and that the accused understands this general principle." *United States v. Benavides*, 57 M.J. 550, 554 n.3 (A.F. Ct. Crim. App. 2002). We now further offer that when nonjurisdictional defense motions are litigated, denied, and then followed by a guilty plea, judges might want to specifically inform an accused that an unconditional guilty plea waives appellate review of those motions, and inquire if understanding that, the accused still desires to plead guilty.

*Id.* (quoting *United States v. Bedania*, 12 M.J. 373, 376 (C.M.A. 1982)).

Applying the approach in *Pena* to this case, Appellant would have to demonstrate that his mistaken belief that appellate review of the motion to suppress was preserved: (a) resulted foreseeably and almost inexorably from the language of a pretrial agreement; (b) was induced by the military judge's comments during the providence inquiry; or (c) was made readily apparent to the military judge, who nonetheless failed to correct that misunderstanding. Neither the text of the plea agreement nor the record of the military judge's plea inquiry contains any language that would have placed an obligation on the military judge to address the waiver of the motion to suppress. Further, there is no indication in the record that Appellant's misunderstanding was made readily apparent to the military judge. Under the circumstances of this case, Appellant has not demonstrated that the military judge abused her discretion.

Finally, even if the military judge did abuse her discretion, Appellant was not prejudiced. Applying the same approach used above for the ineffective assistance of counsel claim to the asserted abuse of discretion by the military judge, "it makes sense" to deny relief because Appellant cannot show he was harmed by not preserving the issue. *United States v. Bradley*, 71 M.J. 13 (C.A.A.F. 2012). As Appellant cannot show harm, we find any error by the military judge harmless.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

15